# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ROBERT J. KINSLEY,

                Petitioner,

v.

WARDEN PAUL KEMPER,

                Respondent.

Case No. 18-CV-1144-JPS

**ORDER**

## 1.    INTRODUCTION

In 2012, Petitioner Robert J. Kinsley ("Kinsley") was charged in Kenosha County Circuit Court with repeated sexual assault of the same child, J.P.C., in violation of Wisconsin Statutes section 948.025(1)(e).[1] (Docket #1 at 2). He was convicted by a jury and, on September 9, 2015, was sentenced to six years of initial confinement followed by four years of supervised release. (*Id.*) Kinsley initiated his direct appeal in 2016. (*Id.* at 3). The Kenosha County Circuit Court held hearings on Kinsley's post-conviction motion and ultimately denied it on August 23, 2016. (Docket #10-11, #10-12, #10-13). The Wisconsin Court of Appeals affirmed on October 18, 2017, and the Wisconsin Supreme Court denied review on June 11, 2018. (Docket #1 at 3).

On July 25, 2018, Kinsley filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. (*Id.*) Kinsley raises one habeas ground, that his trial attorneys provided ineffective assistance by failing to (1) investigate

---

[1] *State of Wisconsin v. Robert J. Kinsley*, 2012CF1213 (Kenosha Cnty. Cir. Ct.) *available at* https://wcca.wicourts.gov/ (last visited Sept. 21, 2021).

witnesses; (2) timely file a witness list; and (3) present expert witness testimony regarding commonalities in adolescent disclosure of sexual assault. (*Id.* at 13). The parties have fully briefed their respective positions on Kinsley's asserted ground for relief. For the reasons explained below, the Court finds that Kinsley's petition is without merit and, therefore, it must be denied.

## 2. BACKGROUND

### 2.1 Trial Proceedings

In 2012, Kinsley was charged in Kenosha County Circuit Court with repeated sexual assault of the same child, J.P.C., in violation of Wisconsin Statutes section 948.025(1)(e).[2] (Docket #1 at 2). To find Kinsley guilty, the jury had to find that the State proved beyond a reasonable doubt that (1) Kinsley committed at least three sexual assaults of J.P.C. while J.P.C. was under the age of 16 and (2) the three sexual assaults took place between July 3, 2010 and February 21, 2011. (Docket #10-7 at 103–04). J.P.C. was fifteen at the time of the alleged sexual assaults. (*Id.* at 123). He reported the sexual assaults in 2012, around two years after they occurred. (*Id.* at 150).

During the two-day trial, the State called four witnesses: the victim J.P.C., expert Julianne McGuire ("McGuire"), Detective Patrick Istvanek ("Detective Istvanek"), and Sarah Tentes ("Tentes"). (Docket #10-7, #10-8). McGuire was allowed to testify regarding delayed reporting, piecemeal reporting, and common actions of people who commit sexual assault of children, but she could not provide an opinion on J.P.C. (Docket #10-7 at 19, 232). Tentes was only allowed to testify about whether there was underage

---

[2] *State of Wisconsin v. Robert J. Kinsley*, 2012CF1213 (Kenosha Cnty. Cir. Ct.) *available at* https://wcca.wicourts.gov/ (last visited Sept. 21, 2021).

drinking and/or drug use at Kinsley's home. (*Id.* at 265–66). Defense called four witnesses as well: Kinsley, Detective Istvanek, and rebuttal witnesses Haley Hensen ("Hensen") and Patience Spinler ("Spinler"). (Docket #10-8). Defense witnesses Hensen and Spinler were limited to rebuttal testimony because defense counsel failed to file a witness list. (Docket #10-7 at 14–15). Specifically, Hensen and Spinler could not testify to specific instances of conduct, but they could testify about whether there was underage drinking going on at the house and regarding J.P.C.'s character for truthfulness and his reputation in the community. (Docket #10-7 at 14–15, 24–25, 265–66, 282–84).

Ultimately, the jury found Kinsley guilty of repeated acts of sexual assault of a child, J.P.C., as charged in the Information. (Docket #10-10). Kinsley was sentenced to six years of initial confinement followed by four years of supervised release. (Docket #10-1).

### 2.2 Post-Conviction Proceedings

Kinsley initiated his direct appeal in 2016. (Docket #1 at 3). The Kenosha County Circuit Court ("Circuit Court") held a two-day *Machner*[3] hearing on Kinsley's post-conviction motion, followed by a third day for oral arguments. (Docket #10-11, #10-12, #10-13). In Kinsley's motion, he argued that he was entitled to a new trial because his trial counsel was ineffective for (1) not filing a witness list; (2) not investigating potential witness Kirsten Berman; and (3) not calling an expert witness to rebut the State's expert witness. (Docket #10-13). The Circuit Court held that Kinsley's attorneys were deficient when they failed to file a witness list— but that there was not a reasonable probability that the outcome of the case

---

[3] *State v. Machner*, 285 N.W.2d 905 (Wis. Ct. App. 1979).

would have been different but for the attorneys' dereliction. (Docket #10-13 at 68–78). Specifically, the Circuit Court found that the witnesses were allowed to testify for purposes of rebuttal despite not having been disclosed in a witness list. (*Id.* at 68–69). Therefore, there was no prejudice resulting from the trial attorneys not filing the witness list.

Regarding Kirsten Berman, the Circuit Court held that her post-conviction testimony would have been inconsistent with Kinsley's statements and position at trial. (*Id.* at 70). And the lead trial attorney testified that he would not have called a witness whose testimony would have been inconsistent with Kinsley's—therefore it was a trial strategy to not make a greater attempt to call Kirsten Berman as a witness. (*Id.*) Further, because the jurors heard testimony from J.P.C. and Kinsley and evidently chose to believe the testimony of J.P.C. over that of Kinsley, the Circuit Court held that there was not a reasonable probability that, but for the trial attorneys not calling Kirsten Berman as a witness, the outcome would have been different. (*Id.* at 70–71).

Lastly, Kinsley presented testimony of Dr. Goldstein in the *Machner* hearings and argued that the trial attorneys' failure to call an expert, such as Dr. Goldstein, was ineffective and should result in a new trial. (Docket #10-12). The Circuit Court held that had the trial attorneys filed a witness list naming Dr. Goldstein, he would have been able to testify as to his numbers and statistics regarding commonalities, like the State's expert Julie McGuire did. (Docket #10-13 at 72–74). But even though the trial attorneys were deficient for not filing a witness list, the Circuit Court held that,

> I cannot make a finding that there would be a reasonable probability that the outcome of the case would have been different but for the deficient performance of the defense attorneys because I don't feel that Dr. Goldstein's numbers

> were all that different than that of Julie McGuire's. I don't
> think they're materially different. They certainty were not
> dramatically different . . .

(*Id.* at 74). In sum, the Circuit Court held that Kinsley was not entitled to a new trial and denied his post-conviction motion on August 23, 2016. (*Id.* at 68–78).

Kinsley appealed to the Wisconsin Court of Appeals ("Court of Appeals"), arguing that Kinsley's trial counsel provided ineffective assistance of counsel by failing to (1) investigate a favorable witness; (2) timely file a witness list, resulting in the exclusion of certain evidence; (3) present an expert to rebut McGuire's testimony; and (4) timely request a psychological examination of J.P.C. pursuant to *Maday*.[4] (Docket #10-4 at 2). The Wisconsin Court of Appeals affirmed the Circuit Court's decision on October 18, 2017, and the Wisconsin Supreme Court denied Kinsley's petition for review on June 11, 2018. (Docket #1 at 3).

### 2.3 Federal Habeas Proceedings

On July 25, 2018, Kinsley filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. (Docket #1). The matter was randomly assigned to United States Magistrate Judge William E. Duffin, who screened the petition under Rule 4 of the Rules Governing § 2254 cases and permitted Kinsley to proceed. (Docket #4). Kinsley raises one habeas ground for relief—that his trial attorneys provided ineffective assistance by failing to (1) investigate witnesses; (2) timely file a witness list; and (3) present expert witness testimony regarding commonalities in adolescent disclosure of sexual assault. (Docket #1 at 13).

---

[4] *State v. Maday*, 507 N.W.2d 365 (Wis. Ct. App. 1993).

The case was next randomly reassigned to this Court in September 2018. In accordance with a modified briefing schedule, Kinsley filed a brief in support of his petition, (Docket #13). Respondent submitted his brief in opposition, (Docket #27), and Kinsley filed a reply, (Docket #18).

3. **LEGAL STANDARD**

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner in custody pursuant to a state-court judgment of conviction is entitled to federal habeas relief only if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). With respect to claims adjudicated on the merits in state court, a federal court can grant an application for a writ of habeas corpus "only if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in state court." *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010) (citing 28 U.S.C. § 2254(d)); *see also White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court

unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013). A state-court decision is based on an unreasonable determination of the facts "when it 'rests upon fact-finding that ignores the clear and convincing weight of the evidence.'" *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White*, 134 S. Ct. at 1702).

Indeed, the habeas petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigating of claims

already rejected in state proceedings." *Id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

A federal court may also grant habeas relief on the alternative ground that the state court's adjudication of a constitutional claim was based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). The underlying state court findings of fact and credibility determinations are, however, presumed correct. *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013). The petitioner overcomes that presumption only if he proves by clear and convincing evidence that those findings are wrong. 28 U.S.C. § 2254(e)(1); *Campbell*, 770 F.3d at 546. "A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey*, 735 F.3d at 949–50 (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). If shown, an unreasonable factual determination by the state court means that this Court must review the claim in question *de novo*. *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008).

Page 8 of 19
Case 2:18-cv-01144-JPS   Filed 09/22/21   Page 8 of 19   Document 19

4.  **ANALYSIS**

The Court concludes that Kinsley is not entitled to relief on any of his ineffective assistance claims in light of the demanding standard of review. The Court will address that standard and each claim in turn.

### 4.1 Ineffective Assistance of Counsel Claims

The Seventh Circuit's *Blake* opinion succinctly summarizes the standards applicable to Kinsley's claims of ineffective assistance:

> A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88 . . . (1984)[.]
>
> To satisfy the first element of the *Strickland* test, appellant must direct the Court to specific acts or omissions by his counsel. In that context, the Court considers whether in light of all the circumstances counsel's performance was outside the wide range of professionally competent assistance. The Court's assessment of counsel's performance is "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" [*Id.* at 689.]
>
> . . .
>
> To satisfy the second *Strickland* element, appellant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome.

*Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) (citations and quotations omitted).

The *Strickland* test, layered underneath the above-described standard of review, produces the following question for the Court to

answer: whether the Wisconsin Court of Appeals' ruling on Kinsley's claims represents an unreasonable application of the already extremely deferential *Strickland* standard. *Harrington*, 562 U.S. at 101. As *Blake* explains, claims of ineffective assistance are already assessed with deference to the defendant's counsel. Presenting such claims in the context of a habeas proceeding means that Kinsley must show not only that the Wisconsin Court of Appeals' analysis was wrong, but additionally that it was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103; *id.* at 105 ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so[.]") (citations and quotations omitted).

To the extent Kinsley seeks to demonstrate that the Wisconsin Court of Appeals' decision was based on an "unreasonable determination of the facts" under 28 U.S.C. 2254(d)(2), he must do more than merely show that the evidence is debatable. *Wood v. Allen*, 558 U.S. 290, 303 (2010). He must demonstrate that "the state court determined an underlying factual issue against the clear and convincing weight of the evidence." *Ben-Yisrayl v. Buss*, 540 F.3d 542, 549 (7th Cir. 2008). Additionally, in the context of a *Strickland* analysis, he must show that this unreasonable fact finding resulted in prejudice. *Id.* at 550.

### 4.1.1 Wrong Legal Standard

Kinsley argues that the Court of Appeals used the wrong legal standard under *Strickland* based on two passages from its opinion and, therefore, he is entitled to habeas relief. (Docket #13 at 17–20).

At the outset of its opinion, the Court of Appeals provided the following rule statement:

> To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that such performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show deficient performance, the defendant must point to specific acts or omissions by counsel that were "outside the wide range of professionally competent assistance." *Id.* at 690. To show prejudice, the defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. We need not address both components of the analysis if the defendant fails to make a sufficient showing on either one. *Id.* at 697.
>
> Appellate review of an ineffective assistance of counsel claim is a mixed question of fact and law. *State v. Pitsch*, 124 Wis. 2d 628, 633-34, 369 N.W.2d 711 (1985). We will not disturb the circuit court's findings of fact unless they are clearly erroneous, but the ultimate determination of whether counsel's performance fell below the constitutional minimum is a question of law we review independently. *See id.* at 634.

(Docket #10-4 at 2–3). Thus, the Court of Appeals properly set forth the correct *Strickland* standard.

Kinsley argues that despite the correct rule statement, the Court of Appeals misstated the *Strickland* standard twice in its opinion. Specifically, in holding that Kinsley was not prejudiced by trial counsel's deficient performance in failing to file a witness list, the Court of Appeals stated that "[i]n light of the weakness of the evidence, as well as the fact that Hansen and Spinler were able to dispute the accuracy of J.P.C.'s testimony in other ways, we cannot say that, but for counsel's error, the result of the proceeding would have been different." (Docket #10-4 at 5). Further, in holding that Kinsley was not prejudiced by counsel's failure to present an expert witness, the Court of Appeals provided "[o]n this record, we cannot say that, but for counsel's failure to present an expert to rebut McGuire's

testimony, the result of the proceeding would have been different." (*Id.* at 6). Kinsley argues that these two statements indicate that the Court of Appeals applied the wrong legal standard under *Strickland* when it determined the prejudice prong. This Court disagrees.

The Supreme Court has stated that § 2254(d) requires "state-court decisions be given the benefit of the doubt" and that "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Holland v. Jackson*, 542 U.S. 649, 654–55 (2004) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). The Seventh Circuit recently pointed out in *Fayemi v. Ruskin*, 966 F.3d 591 (7th Cir. 2020) that:

> The Supreme Court has encountered incomplete or inaccurate shorthand before and held that it does not justify relief, as long as the state court makes clear its understanding of the correct standard. *See Holland v. Jackson*, 542 U.S. 649, 654–55, 124 S. Ct. 2736, 159 L.Ed.2d 683 (2004); *Woodford v. Visciotti*, 537 U.S. 19, 22–24, 123 S. Ct. 357, 154 L.Ed.2d 279 (2002). *See also*, e.g., *Sussman v. Jenkins*, 636 F.3d 329, 359–60 (7th Cir. 2011); *Woods v. Schwartz*, 589 F.3d 368, 378 n.3 (7th Cir. 2009); *Stanley v. Bartley*, 465 F.3d 810, 813 (7th Cir. 2006).

*Fayemi*, 966 F.3d at 594.

In this case, the Court of Appeals made it clear, through its rule statement, citation to cases with the correct legal standard, and use of the correct standard when addressing the cumulative prejudice analysis, that it knew and used the correct legal standard under *Strickland* when deciding the case. Thus, the Court finds that Kinsley's legal standard argument lacks merit and does not entitle him to the relief he seeks.

### 4.2 Failure to Present Expert Witness

The Court of Appeals held that Kinsley was not prejudiced by his counsel's failure to present an expert to rebut the State's expert testimony.

(Docket #10-4 at 5–6). The State called social worker McGuire as an expert witness regarding common behaviors of child victims of sexual assault. As the Court of Appeals provided

> In her testimony, McGuire noted, among other things, that: (1) child sexual assault victims often know their assailants; (2) assailants often include family members or trusted family friends; (3) some child sexual assault victims delay disclosure of their victimization; (4) child sexual assault victims often experience ambivalence or reluctance to disclose their victimization; (5) child sexual assaults often occur while others are present in the home; and (6) child sexual assault victims often forget parts of what happened to them. Each of these characteristics was present in J.P.C.'s case.
>
> Kinsley suggests that McGuire's testimony bolstered J.P.C.'s credibility and therefore required an expert to rebut it. However, the failure to present a competing expert is not automatically prejudicial. *See Harrington v. Richter*, 562 U.S. 86, 111 (2011) ("*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense."). Moreover, counsel did effectively challenge McGuire's testimony in cross-examination. There, she was forced to concede a number of points, including that: (1) her employer routinely partnered with law enforcement; (2) her graduate degree in social work was a general degree and she was not an expert in child abuse; (3) common behaviors in child sexual assault victims can differ according to age; (4) she did not know whether J.P.C.'s allegations were true; (5) some children falsely accuse adults of sexual assault because they are "mad at the adult;" and (6) she had no specific recollection of the case.[] On this record, we cannot say that, but for counsel's failure to present an expert to rebut McGuire's testimony, the result of the proceeding would have been different.

(*Id.* at 5–6).

Kinsley argues that the Court of Appeals' decision on prejudice was unreasonable because it did not discuss the details of the post-conviction testimony of Dr. Goldstein, who represented an expert witness who would have disputed some of McGuire's testimony. (Docket #13 at 16–20). Kinsley primarily relies upon the argument that the Court of Appeals used the wrong legal standard, which this Court found has no merit, *supra* Section 4.1.1. What remains is Kinsley's dissatisfaction that the Court of Appeals did not write about his post-conviction expert's testimony. (*Id.*) However, Kinsley provides no case law supporting his claim that the Court of Appeals was obliged to address the expert's testimony in writing in its opinion, and when it did not, it was acting unreasonably under *Strickland*.

As noted by the Supreme Court, "federal courts have no authority to impose mandatory opinion-writing standards on state courts," and state appellate courts shoulder heavy caseloads. *Johnson v. Williams*, 568 U.S. 289, 300–01 (2013). While it may have been preferrable for the Court of Appeals to address Dr. Goldstein's testimony, it was not required. The Court's review is confined to "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Applying this extraordinarily deferential standard, this Court finds that the Court of Appeals did not err when it found that Kinsley was not prejudiced by his counsel's failure to present an expert. Therefore, Kinsley's expert witness claim has no merit and does not warrant relief.

### 4.3    Failure to File Witness List

The Court of Appeals held that Kinsley's trial counsel performed deficiently by filing to file a witness list, but Kinsley was not prejudiced due to that deficiency. (Docket #10-4 at 4–5). The Circuit Court limited Kinsley's witnesses to rebuttal only due to trial counsel failing to file the witness list.

(*Id.*) The two witnesses who were limited to rebuttal testimony did not testify about J.P.C.'s reputation for untruthfulness. (*Id.*) The Court of Appeals noted that reputation evidence is of marginal probative value and that Kinsley's trial counsel conceded as much during the post-conviction motion hearings. (*Id.*) The Court of Appeals held that, "[i]n light of the weakness of the evidence, as well as the fact that Hansen and Spinler were able to dispute the accuracy of J.P.C.'s testimony in other ways, we cannot say that, but for counsel's error, the result of the proceeding would have been different." (*Id.* at 5).

Kinsley argues that the Court of Appeals' decision regarding prejudice is unreasonable under *Strickland*. (Docket #13 at 20–22; Docket #18 at 15). However, he has not pointed to any case law to support his argument. (*Id.*) Therefore, Kinsley has not demonstrated that the Court of Appeals' *Strickland* analysis was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103. The Court finds that Kinsley's witness list claim is without merit and does not warrant relief.

### 4.4 Failure to Investigate Favorable Witness

Kinsley argues that the Court of Appeals' conclusion that failure to investigate Berman was not deficient is contrary to (and an unreasonable application of) *Strickland* and was an unreasonable determination of the facts. (Docket #13 at 22–27). In his briefings on this issue, Kinsley spends most of his time arguing that the trial attorneys were deficient by not investigating Berman. (*Id.*) However, that is not the proper question for this Court to consider. Instead, this Court must decide whether the Court of

Appeals' rulings on Kinsley's claim represent an unreasonable application of the *Strickland* standard. *Harrington*, 562 U.S. at 101.

The Court of Appeals rejected Kinsley's claim that his trial counsel was ineffective when they failed to investigate a favorable witness, his stepsister Kirsten Berman. As the Court of Appeals noted,

> Given Kinsley's directives not to contact Berman or involve her in the case, we cannot fault counsel for failing to investigate her as a witness. *Strickland* instructs that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691. Here, it was reasonable for counsel—and not deficient performance—to respect Kinsley's wishes and not investigate Berman.

(Docket #10-4 at 4).

Kinsley argues that the Court of Appeals' decision was unreasonable under *Strickland* and cites to *Toliver v. Pollard*, 688 F.3d 853 (7th Cir. 2012) in support of his argument. However, *Toliver* is easily distinguishable from this case. In *Toliver*, the defendant wanted to call two family members as witnesses, but trial counsel disagreed and decided not to call them because trial counsel thought the jury would not believe them based on their relationship with the defendant. 688 F.3d at 862. The Seventh Circuit found that it was not reasonable for trial counsel to decide not to call the two family members when they were the only witnesses that would have corroborated defendant's theory of defense and trial counsel did not call any other witnesses besides the defendant. *Id.* In contrast, Kinsley told his trial attorneys not to contact Berman, and two witnesses were called to dispute J.P.C.'s testimony and support Kinsley's theory of defense. Therefore, this case is distinguishable from *Toliver*.

The Court finds that the Court of Appeals' conclusion is not unreasonable under *Strickland*. As the Court of Appeals properly pointed out, *Strickland* states that counsel's actions regarding investigation decisions are critically reliant on the information the defendant has provided his counsel. *Strickland*, 466 U.S. at 691. The Court finds that the Court of Appeals reasonably determined that Kinsley's trial counsel was not deficient when they did not investigate Berman. Therefore, his failure to investigate claim has no merit and does not warrant relief.

5.    **CONCLUSION**

Even construed generously, Kinsley's brief merely contends that the Wisconsin Court of Appeals got it wrong in the above holdings, not that its rulings were unreasonable in light of U.S. Supreme Court precedent. In other words, this habeas action is nothing more than a thinly veiled attempt at a "do-over" in this Court. Kinsley parrots precisely the same arguments he and his counsel have made all along, in the hope that this Court will disagree with the state courts. This is not an appropriate use of a federal habeas petition. In any event, the Court of Appeals' decision was far from unreasonable. Rather, it was entirely consistent with *Strickland*. At the very least, Petitioner has failed to demonstrate that *all* fair-minded jurists would disagree with the Court of Appeals' reasoning. Therefore, Kinsley is not entitled to the relief he seeks and his petition will be dismissed with prejudice.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the [habeas] applicant." To obtain a certificate of appealability, Kinsley must make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), by establishing that "reasonable

Page 17 of 19
Case 2:18-cv-01144-JPS    Filed 09/22/21    Page 17 of 19    Document 19

jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). For the reasons discussed above, no reasonable jurists could debate whether Kinsley's claims have merit. The Court will, therefore, deny Kinsley a certificate of appealability.

Finally, the Court closes with some information about the actions that Kinsley may take if he wishes to challenge the Court's resolution of this case. This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 30 days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Page 18 of 19
Case 2:18-cv-01144-JPS   Filed 09/22/21   Page 18 of 19   Document 19

Accordingly,

**IT IS ORDERED** that Petitioner Robert J. Kinsley's petition for a writ of *habeas corpus* (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner Robert J. Kinsley's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly

Dated at Milwaukee, Wisconsin, this 22nd day of September, 2021.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge